IN THE MATTER OF LEON SOL HARRIS, AN
ATTORNEY AT LAW.

May 2, 1989.

## ORDER

LEON SOL HARRIS, of BROOKLYN, NEW YORK, who was admitted to the Bar of this State in 1975, having been ordered to show cause why he should not be disbarred or otherwise disciplined pursuant to Rule 1:20–7, based on disciplinary action taken against him in the State of New York, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and LEON SOL HARRIS is suspended from the practice of law for a period of two years and until the further order of the Court, retroactive to September 12, 1988; and it is further

ORDERED that respondent shall not be eligible to apply for restoration to the practice of law in this State until he has been

readmitted to the bar of the State of New York; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of respondent as an attorney at law of the State of New Jersey; and it is further

ORDERED that respondent be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### Decision and Recommendation of the Disciplinary Review Board

This matter is before the Board on a Motion for Reciprocal Discipline filed by the Office of Attorney Ethics pursuant to *R.* 1:20–7, based upon respondent's suspension from the practice of law in the state of New York for a period of two years, effective September 12, 1988, for violations of *DR* 1–102(A)(4), (5) and (6).[1] *Departmental Disciplinary Committee for the First Judicial Department v. Harris,* Docket Nos. M–659, M–1599.

Respondent was admitted to the practice of law in the State of New York in 1958. In 1975, he was admitted to the New Jersey bar. In December 1983, respondent induced Lloyd

---

[1]The cited Disciplinary Rules in the New York disciplinary case are identical to the Disciplinary Rules in effect in New Jersey at the time of respondent's unethical conduct.

Weiss ("Weiss"), a client of his for 15 years, to lend $55,000 to West Village Associates, Inc. ("WVA"), a company owned by Joel Bresslauer ("Bresslauer"), also a client of respondent. The loan was designed to develop a real estate project in Greenwich Village at 6 Bank Street. Respondent at that time represented Bresslauer in several litigation matters involving substantial financial claims and judgments entered against Bresslauer. In fact, respondent too was a judgment-creditor of Bresslauer. To induce Weiss to lend the monies, respondent agreed to execute a personal guaranty of the loan, which was primarily secured by a second mortgage on the Bank Street property.

Respondent failed to advise Weiss of Bresslauer's financial obligations to respondent; failed to advise Weiss that respondent had filed liens against the property given as security for the loan; failed to advise Weiss that Bresslauer was turning over to respondent a portion of the loan; failed to advise Weiss that the owner of the mortgaged property was not WVA but, rather, another company controlled by Bresslauer; most importantly, respondent failed to advise Weiss that a deed to the property in favor of Subiflex, Inc. was being held in escrow by the attorney for Subiflex under a 1980 agreement, whereby the deed could be recorded by Subiflex in the event that Bresslauer did not fulfill certain obligations by a certain date. As a result of Bresslauer's default, Subiflex had already instituted suit in connection with the 1980 agreement.

Subsequently, Weiss discovered that Bresslauer had misappropriated the loan proceeds. When Weiss confronted respondent in late January or early February 1984, respondent apologized and confessed that he had induced Weiss to participate in the transaction because respondent "needed the money."

Eventually WVA defaulted on its obligation to repay Weiss' investment return of $11,000 and the $55,000 principal sum. Following the institution of suit against respondent, Weiss was

first repaid the $11,000; subsequently, he was awarded damages of $58,583.30, including interest and legal fees.[2]

On September 4, 1985, respondent was personally served with a subpoena for his deposition as a debtor under the judgment. On September 10, 1985, a letter was hand-delivered to respondent reminding him of the terms of the subpoena, which required him to appear at the offices of Weiss' attorney on September 19, 1985. Respondent failed to appear. At an investigatory interview conducted by counsel for the Departmental Disciplinary Committee on February 19, 1986, respondent testified that he had not been served with the subpoena. That was untrue.

At the conclusion of the disciplinary proceedings in New York, respondent was found guilty of conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of *DR* 1–102(A)(4) and of conduct adversely reflecting on his fitness to practice law, in violation of *DR* 1–102(A)(6), by fraudulently inducing a long-standing friend and client to lend monies to Bresslauer, who was financially unreliable. Respondent was found guilty also of conduct prejudicial to the administration of justice, in violation of *DR* 1–102(A)(5) and of conduct which adversely reflected on his fitness to practice law, in violation of *DR* 1–102(A)(6), by willfully failing to appear for his deposition pursuant to subpoena. In addition, respondent was found guilty of conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of *DR* 1–102(A)(4) and conduct adversely reflecting on his fitness to practice law, in violation of *DR* 1–102(A)(6), by falsely testifying that he had not been served with the subpoena.

The panel report recommended that respondent be suspended from the practice of law for a period of two years. The

[2]Pursuant to respondent's brief submitted in opposition to the OAE's Motion for Reciprocal Discipline, to date respondent has paid Weiss in excess of $51,000, based on respondent's personal guarantee of the loan.

Appellate Division of the New York Supreme Court concurred with the panel's recommendation. By an Order filed August 11, 1988, respondent was suspended from the practice of law for two years, effective September 12, 1988.[3]

The Office of Attorney Ethics now requests that full reciprocity be accorded to the New York decision to suspend respondent for a period of two years.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board recommends that the motion be granted and that respondent be reciprocally disciplined for a period equal to his suspension in New York. Further, restoration should be contingent upon his restoration in New York.

In respondent's brief filed in opposition to the OAE's Motion for Reciprocal Discipline, he argues that Weiss was aware that respondent had an interest in the Bank Street property. Respondent cites certain portions of Weiss' testimony before the Disciplinary Committee in order to support his contention (Respondent's brief, at page 5).

Respondent appears to be laboring under the mistaken impression that the Disciplinary Committee found that respondent had not disclosed to Weiss that respondent had a financial interest in the property. Weiss' awareness of respondent's participation in the venture is not in dispute, however. Paragraph 39 of the Findings of Fact and Conclusions of Law of the Disciplinary Committee unequivocally states that "[a]t the time of the agreement, Weiss believed respondent had an ownership interest in the property."

---

[3]Under the provisions of *R.* 1:20–7(a), respondent was required to inform the Clerk of the Supreme Court of New Jersey and the Director of the Office of Attorney Ethics of the disciplinary action taken by the New York authorities. No such notice was ever received by the Clerk or the Director.

Respondent seems to believe that proof of Weiss' knowledge of respondent's personal economic stake in the property will lead to his exoneration. Although lack of knowledge by Weiss would have aggravated respondent's misconduct, it is the numerous other ethical violations found by the Disciplinary Committee and the Appellate Division of the New York Supreme Court that led to respondent's two-year suspension.

In fact, in his answer dated September 26, 1986, respondent admitted the allegations contained in Charge One, Paragraph 5, sub-paragraphs (a) through (j) of the Statement of Charges filed by the Disciplinary Committee. The pertinent subparagraphs state as follows: (a) respondent failed to advise Weiss that respondent and/or his companies expected to receive a portion of the $55,000 loan to Bresslauer; (b) respondent failed to advise Weiss that Bresslauer and/or his companies were indebted to respondent and/or his companies for substantial sums of money with interest and that respondent had filed mechanics' liens on the property in behalf of one of respondent's corporations; (c) respondent failed to advise Weiss that WVA was not the owner of the property but, rather, another corporation controlled by Bresslauer; (d) respondent failed to advise Weiss that no offering statement or prospectus for the conversion of the property to cooperative ownership had been filed, as required by law; (e) respondent failed to advise Weiss that respondent was representing Bresslauer and his companies in certain legal matters, including the Subiflex case; (f) respondent failed to advise Weiss that a deed to the property in favor of Subiflex was being held in escrow by the attorney for Subiflex under a 1980 agreement between Subiflex and a partnership controlled by Bresslauer; (g) respondent failed to advise Weiss that, under the terms of the 1980 agreement, the deed in escrow could be delivered to and recorded by Subiflex in the event that Bresslauer did not meet certain terms and conditions by a certain date; (h) respondent failed to advise Weiss that Subiflex had instituted litigation in connection with the 1980 agreement; (i) respondent failed to advise Weiss of

any alternative investment possibilities, and (j) respondent failed to advise Weiss to retain another attorney to represent him and protect his interests in the transaction.

In his answer, respondent admits those allegations. All of the foregoing charges were sustained both by the hearing panel and by the Appellate Division of the New York Supreme Court. Accordingly, the Board adopts the findings of the Appellate Division of the New York Supreme Court. *Matter of Pavilonis*, 98 *N.J.* 36, 40 (1984); *In re Tumini*, 95 *N.J.* 18, 21 (1979); *In re Kaufman*, 81 *N.J.* 300, 302 (1979).

In his brief, respondent argues that the Disciplinary Committee did not allow him to cross-examine Weiss with regard to certain "privileged communications" between Weiss and respondent. After a careful review of the record, the Board concludes that the objections sustained by the committee chair were proper and that the procedure followed in the foreign disciplinary matter did not constitute a deprivation of due process.

Respondent has not demonstrated that any of the exceptions contemplated in *R* 1:20–7(d)(1) through (5) apply. The discipline accorded in New Jersey should, therefore, correspond to that imposed in New York. No good reason to the contrary is shown. *In re Kaufman, supra,* 81 *N.J.* at 303.

It is a long-standing principle that all transactions of an attorney with his client are subject to close scrutiny and that the burden of establishing the fairness and equity of the transaction rests upon the attorney. *In re Gallop*, 85 *N.J.* 317 (1981); *Matter of Nichols*, 95 *N.J.* 126 (1984). When a lawyer has a personal economic stake in a business transaction, he must see to it that the client understands that the attorney's objectivity and ability to give the client undivided loyalty may be affected. *In re Wolk*, 82 *N.J.* 326, 333 (1980). Lawyers have a duty to explain

carefully, clearly, and cogently why independent legal advice is required.

Here, as a friend and client of some 15 years, Weiss trusted respondent both professionally and personally. He relied on respondent to protect his interests. Unconscionably, respondent took advantage of his position as a trusted advisor to induce Weiss to enter into a risky transaction. Respondent was fully aware of the financial instability of the venture, as demonstrated by the numerous judgments already entered against Bresslauer, including a judgment in favor of respondent. Yet, respondent assured Weiss that, as his lawyer and friend, he would never permit him to enter into a hazardous venture. The Board finds that respondent's conduct in luring Weiss into the transaction was unscrupulous and crafty.

In not dissimilar circumstances, an attorney who induced his client to participate in a business venture by unscrupulous means was suspended from the practice of law for a period of three years. *In re Carlsen*, 17 *N.J.* 338, 346 (1955). In that case, the attorney, his client, and another formed a corporation to purchase distillery property in Puerto Rico. The attorney failed to advise the client to seek the advice of independent counsel before participating in the venture. After the deal collapsed, the client discovered that the attorney and the other principal, who shared one-half ownership in the business, had not matched the client's investments therein, as originally agreed. The attorney's suspension for three years was predicated upon the attorney's deceitful means and his failure to discharge his duty to disclose to the client all of the circumstances concerning the transaction.

Here, respondent's misconduct was similar to the attorney's in *In re Carlsen*. Through fraud and deceit, respondent induced a long-time client and friend to invest a large sum of money in a venture whose risks were well known to respondent. His motivation was greed, unchecked by conscience.

Respondent's misconduct was aggravated by his false testimony before the Disciplinary Committee that he had not been served with a subpoena to appear for depositions in connection with a judgment entered against him by Weiss. As an officer of the court, an attorney has the duty of good faith and honorable dealing with all judicial tribunals. *In re Turner*, 83 *N.J.* 536 (1980); *In re Winberry*, 101 *N.J.* 557 (1986). Such duty extends to an attorney's dealings with disciplinary authorities. Indeed, an attorney is obligated to cooperate in ethics matters. *In re Gavel*, 22 *N.J.* 248 (1956).

Respondent has not advanced any mitigating factors which have not already been considered by the New York court. Indeed, in imposing a two-year suspension from the practice of law, that court took into account the fact that respondent had been a member of the bar for over 30 years with an unblemished record and that he had repaid Weiss in excess of $51,000 based on respondent's personal guaranty of the loan.

In view of the foregoing, the Board unanimously recommends that the discipline imposed be equal to that imposed by the New York authorities, namely, that respondent be suspended from the practice of law for a period of two years, effective September 12, 1988. The Board further recommends that respondent be eligible for reinstatement in New Jersey only after he has been reinstated in New York.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.